J-S05018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC MYERS | : | |
| | : | |
| Appellant | : | No. 3079 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010257-2014

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED MARCH 10, 2025**

Eric Myers (Appellant) appeals from the judgment of sentence imposed following the revocation of his probation, based upon Appellant's direct probation violation and commission of numerous new crimes. Appellant challenges the discretionary aspects of his revocation sentence, and also claims the violation of probation (VOP) court imposed unlawful rehabilitative conditions in connection with Appellant's sentence. Because we agree the VOP court lacked legal authority to impose the rehabilitative conditions, we vacate that part of Appellant's sentence. In all other respects, we affirm.

The VOP court explained the factual and procedural history underlying this case as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On February 29, 2016, [at docket number CP-51-CR-0010257-2014 (case 10257),] Appellant … tendered a non-negotiated guilty plea to … robbery – threat[en] immediate serious bodily injury, 18 Pa.C.S.A. § 3701(a)(1)(ii), theft by unlawful taking, *id.* § 3921(a); receiving stolen property, *id.* § 3925(a); and possessing [an] instrument [of crime] ("PIC"), *id.* § 907(a) [(collectively, the underlying offenses)]. The underlying [offenses] stemmed from [Appellant's] arrest on July 15, 2014, for committing a [] knife[-]point robbery two days earlier of a seventeen-year-old victim, who had been simply walking toward [his] home in the 3200 block of Willits Road, Philadelphia, PA. Sentencing was deferred pending completion of a presentence investigation [(PSI) report] and mental health evaluation.

[Previously,] on October 21, 2013, [Appellant] and a conspirator had committed a strikingly similar knife[-]point taking of another [] teenager's cellular phone [] in the 4600 block of Pennypack Street, Philadelphia, PA. In that case, which had been docketed under MC-51-CR-00042122-2013 [(case 42122)], on November 19, 2013, [Appellant] … entered a negotiated guilty plea and [was] sentenced to twelve months [of] reporting probation. [Appellant's] supervising probation [in case 42122] had been in place just four months when he [] committed the [underlying offenses]. ….

[The matter proceeded to sentencing for the underlying offenses. The trial court, the Honorable Anne Marie B. Coyle, who also presided over the instant VOP proceedings,] reviewed [Appellant's PSI] reports and mental health assessments and considered the recommended [sentencing] guidelines…. As a then twenty-four-year-old adult, [Appellant] had been arrested five times and convicted five times, and had been committed once. [The underlying offenses] posed a direct violation of [Appellant's probation in case No. 42122.] ….

[Judge Coyle] noted within the [PSI] reports and mental health assessments that although [Appellant] had earned his high school diploma in 2010, he remained largely unemployed. [Appellant] reported a significant history of alcohol, opiates, heroin, and marijuana ("THC") abuse. He complained that opiates had been his drug of choice. The [PSI] report reflected that [Appellant's] prior attendance in an inpatient [drug] treatment program at the Wedge Medical Center in 2014 [] had not been successful. [The PSI further reflected that Appellant] had been

raised by his working father and [] "felt loved and provided for" by his dad because his mom had suffered from opiate addiction.

The [PSI] reports noted that [Appellant] had previously fathered one son, then aged two years, [who] had been removed from [Appellant's] care, and from [the] care of that child's mother, by the City of Philadelphia Department of Human Services [(DHS)]. This child was subsequently adopted by a family who declined to allow [Appellant] to have any contact. The Presentence Investigator recommended that [Appellant] be intens[iv]ely supervised, [perform] random urinalysis and engage in drug treatment, engage in educational or vocational training, and gain, maintain, and prove legitimate employment. ….

On May 12, 2016, after [a] hearing and consideration of all relevant factors, Appellant was sentenced [at case 10257] to a term of three (3) years to six (6) years [in prison] …, followed by four (4) years of intensively supervised probation [for] the robbery conviction, and five (5) years of intensively supervised probation assigned to the PIC offense. The convictions for theft by unlawful taking and receiving stolen property merged for purposes of sentencing. Rehabilitative conditions were imposed, including obtaining and maintaining legitimate employment, engaging in ongoing drug and alcohol treatment, and submitting to random [drug] testing[.] …. No appeal was filed[.]

VOP Court Opinion, 5/28/24, at 2-4 (footnote citations modified and moved to body; capitalization and punctuation modified).

The VOP court also explained the procedural history relative to Appellant's direct probation violation:

[O]n or about April 6, 2022, [the VOP] court was notified that Appellant had incurred a new arrest for the charges of first degree felony offenses of aggravated assault …, recklessly endangering another person, endangering [the] welfare of children - parent/guardian[] commits offense [(EWOC)], and simple assault … [(collectively, the new offenses)], for events that had occurred on November 1, 2021, with an arrest date of April 5, 2022.

- 3 -

*Gagnon I* & *II*[1] reports were generated. [The VOP court subsequently] … appointed [Appellant] counsel. Following COVID-19 protocols in place at the time, the violation of probation hearing was continued pending disposition of Appellant's open bills….

On May 4, 2023, following a bench trial [regarding the new offenses] …, Appellant was found guilty of aggravated assault … [and two counts each of EWOC] … [and] simple assault …, under [two] docket number[s,] CP-51-CR-0004336-2022[, and CP-51-CR-0004343-2022]. The charges stemmed from documented social and medical reports that … [Appellant], a 200-pound plus, 5-foot 10-inch adult male, had physically abused two minor children. [Appellant] repeatedly choked, grabbed, shook and head[-]banged his girlfriend's five-year[-]old daughter, causing bruising to her neck and ears, and [] he had also choked her ten-year-old son. …. Sentencing [at both dockets] was deferred until July 14, 2023, following preparation of [PSI] reports and mental health assessments.

[At case 10257, o]n September 14, 2023, following [a VOP] hearing, and upon thorough review of all [PSI] reports, mental health assessment[s], the *Gagnon* reports, and of the transcribed trial record …, [the VOP] court found Appellant to be in violation of probation and revoked probation. Revocation was uncontested. Following revocation of probation, and upon review of all salient sentencing factors, [the VOP] court imposed a sentence [(original VOP sentence)] of seven (7) years to fourteen (14) years [in prison] … [for Appellant's] robbery conviction, and a consecutive term of two (2) to five (5) years of incarceration … on the PIC charge. No further penalty was imposed on the theft by unlawful taking and receiving stolen property convictions, as both convictions merged for purposes of sentencing. The aggregate sentence was nine (9) years to [nineteen (19) years in prison].

_____

[1] *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that due process requires that a probationer be given a preliminary (*Gagnon I*) and final (*Gagnon II*) hearing prior to revoking probation).

On September 25, 2023, [Appellant] filed a Motion for Reconsideration of VOP Sentence.[2]  On October 12, 2023, upon consideration of Appellant's Motion for Reconsideration …, [the VOP] court vacated the September 14, 2023, [original VOP] sentence and scheduled another sentencing [] hearing for November 21, 2023.

On November 21, 2023, [a resentencing] hearing [(the resentencing hearing)] was held to allow Appellant to present additional mitigation evidence,[3] as recited within his counselled Motion for Reconsideration.  Following [a] full hearing, and upon additional review of all [PSI] reports, mental health assessments and circumstances therein, [the VOP] court sentenced Appellant to seven (7) years to fourteen (14) years [in prison for] … the robbery conviction, and a concurrently[-]running period of two (2) years to five (5) years of confinement on the PIC charge.  Again, no further penalty was imposed on the theft or receiving stolen property convictions.  (N.T., 11/21/23, pp. 6-11).[4]  In effect, the aggregate sentence had been **reduced** to seven (7) years to [fourteen (14) years in prison]….  **Rehabilitative conditions were again** [**imposed (the VOP conditions) as part of Appellant's sentence**].  Credit for custodial time was accorded.

VOP Court Opinion, 5/28/24, at 4-6 (emphasis and footnotes added; capitalization and punctuation modified).

We hereinafter collectively refer to the aforementioned rehabilitative conditions as "the VOP conditions."  Specifically, the VOP court's sentence

_____

[2] Appellant asserted in his motion for reconsideration that he "wishes to present further mitigation to [the VOP court] for reconsideration of sentence." Motion for Reconsideration, 9/25/23, ¶ 2.

[3] Appellant addressed the VOP court at the resentencing hearing, but did not present any evidence.  *See* N.T., 11/21/23, at 6-10.

[4] The VOP court did not impose a term of probation in connection with its order of sentence.  Moreover, the VOP court ordered Appellant's sentence to run consecutively with any other sentence he was then serving.

directed that Appellant was, *inter alia*, 1) prohibited from having "unsupervised contact with any minor child" or "residing with any minor child"; 2) prohibited from having contact with any illegal drugs or weapons; 3) required to submit to random drug testing; 4) required to undergo a mental health evaluation and anger management counseling; 5) required to perform 150 hours of community service; and 6) required to engage in occupational training and attempt to obtain legitimate employment. Sentencing Order, 11/21/23, at 2-3; **see also** N.T., 11/21/23, at 12-14. Significantly, Appellant did not file a motion for reconsideration of his new VOP sentence.

Appellant timely filed a notice of appeal. Appellant and the VOP court have complied with Pa.R.A.P. 1925(b).

Appellant presents the following issues for our review:

1. Did the sentencing court err in ordering that [Appellant] may never have unsupervised contact with a minor child or reside with same?

2. Did the sentencing court err in ordering several additional special conditions (**See** Sentencing Order pp. 2-3), when [Appellant was] not sentenced to a term of probation (**See Commonwealth v. Mears**, 972 A.2d 1210 (Pa. Super. 2009))?

3. Did the sentencing court abuse its discretion by imposing a seven to fourteen[-]year sentence on a probation violation, when such sentence is excessive and is not consistent with the gravity of [Appellant's] violation, the need for public protection, or his need for rehabilitation?

Appellant's Brief at 6 (issues reordered; punctuation modified).

Appellant's first two issues challenge the VOP court's authority to impose the VOP conditions in connection with its sentence. Both issues implicate the legality of Appellant's sentence. *See Mears*, 972 A.2d at 1211 (stating a defendant's challenge to the trial court's lack of "statutory authority for the imposition of a condition of sentence … is a challenge to the legality of the sentence."). We address these closely related issues together.

A challenge to the legality of a sentence presents "a pure question of law." *Commonwealth v. Wright*, 276 A.3d 821, 827 (Pa. Super. 2022) (citation omitted). "As such, our scope of review is plenary and our standard of review *de novo*." *Id.* (citation and quotation marks omitted); *see also Commonwealth v. Finnecy*, 135 A.3d 1028, 1031 (Pa. Super. 2016) ("[O]ur scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the judgment of sentence." (citation and quotation marks omitted)).

It is well-settled that

> [i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Mears*, 972 A.2d at 1211 (citation omitted).

Here, Appellant argues the VOP court lacked legal authority to impose the VOP conditions as part of his sentence. *See* Appellant's Brief at 12-15.

Appellant emphasizes that the VOP court did not impose any sentence of probation in its sentencing order. *Id.* at 12. Appellant claims the VOP conditions "exceed the [VOP] court's statutory authority as a matter of law" and must be vacated. *Id.* at 12-13.

Appellant relies upon our decision in *Mears*, *supra*. Appellant's Brief at 12-13. In *Mears*, after the trial court convicted appellant of firearms offenses, it imposed an aggregate sentence of 4½ to 9 years in prison. *Mears*, 972 A.2d at 1211. As part of the sentence, the trial court imposed a "condition that [a]ppellant be subject to random searches by the Gun Violence Task Force" (the gun condition). *Id.* However, the court did **not** sentence appellant to a term of probation. *Id.* at 1212. The appellant appealed, asserting the gun condition constituted an illegal sentence. *Id.* at 1211. This Court agreed and reasoned as follows:

> First, we note that the trial court did not sentence appellant to probation; thus, there can be no probation conditions. Secondly, because the court sentenced appellant to a maximum term of incarceration of two or more years, appellant's parole would be under the exclusive supervision of the Pennsylvania Board of Probation and Parole ("PBPP") and not the Court of Common Pleas. 61 P.S. § 331.17, [] *see* [*also*] *Commonwealth v. Camps*, 772 A.2d 70, 74 (Pa. Super. 2001) (holding that "[I]t is well settled that the [PBPP] has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years[.]"). Therefore, any condition the sentencing court purported to impose on appellant's state parole is advisory only. *See* 61 P.S. § 331.18 (A judge in his [or her] discretion may make at any time any recommendation [the judge] may desire to the board respecting the person sentenced and the term of imprisonment said judge believes such person should be required to serve before a parole is granted to him, but a recommendation made by a judge as aforesaid respecting the parole or terms of

parole of such person **shall be advisory only**, and no order in respect thereto made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions herein conferred upon it.) (emphasis added).

*Mears*, 972 A.2d at 1212 (citations and capitalization modified). Accordingly, we vacated the gun condition, "as the trial court was without the authority to impose this condition." *Id.*

In *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super. 2011), we cited *Mears* and concluded the sentencing court exceeded its authority in imposing, as part of defendant's sentence of 18 to 90 years in prison, a "no contact" restriction regarding the victims or their families, if defendant was released on parole. *Id.* at 141-42. The *Coulverson* Court explained that

> [t]he conclusion we reached in *Mears* is currently codified at 61 Pa.C.S.[A.] §§ 6132(a) [(governing the specific powers of the PBPP)] and 6134...(2) ("A recommendation made by a judge under paragraph (1) respecting the parole or terms of parole of a person shall be advisory only. No order in respect to the recommendation made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions conferred on it by this chapter.").

*Coulverson*, 34 A.3d at 142.

Instantly, the Commonwealth concedes (although the VOP court does not)[5] the illegality of the VOP conditions. *See* Commonwealth Brief at 10-13. The Commonwealth asserts that the VOP conditions "should be treated as

---

[5] In its opinion, the VOP court explained its rationale for concluding the VOP conditions were lawful. VOP Court Opinion, 5/28/24, at 15-16.

recommendations to the [PBPP], which has the authority to grant and supervise any eventual parole." *Id.* at 10 (footnote omitted).

We agree with Appellant and the Commonwealth that the VOP court lacked statutory authority to impose the VOP conditions as part of Appellant's sentence. Like the situation in *Mears*, the VOP court sentenced Appellant to a term of incarceration in excess of two years, and did not impose any probationary term. *Mears*, 972 A.2d at 1212; *see also generally* Sentencing Order, 11/21/23. Because the VOP court lacked statutory authority to impose the VOP conditions in connection with Appellant's sentence, we vacate that portion of the sentencing order. *Coulverson*, *supra*; *Mears*, *supra*.

We next turn to Appellant's final issue, wherein he challenges the discretionary aspects of his sentence. Specifically, Appellant asserts the VOP court imposed a manifestly unreasonable sentence of total confinement, and failed to consider mitigating evidence. *See* Appellant's Brief at 8-11, 15-18.

There is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Lawrence*, 313 A.3d 265, 286 (Pa. Super. 2024) ("Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." (citation and brackets omitted)). Rather, this Court applies a four-part test to determine:

> (1) whether the appellant filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) **whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence**, *see* Pa.R.Crim.P. 720; (3) whether the

J-S05018-25

appellant's brief has a fatal defect, *see* Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Bartic*, 303 A.3d 124, 134 (Pa. Super. 2023) (emphasis added; brackets and some citations omitted).

Instantly, Appellant has filed a timely notice of appeal, and his brief includes a Rule 2119(f) statement. However, Appellant did not preserve his discretionary sentencing challenge either at the resentencing hearing or in a post-sentence motion to reconsider his new VOP sentence.

"[I]ssues challenging the discretionary aspects of a sentence **must** be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Gibbs*, 981 A.2d 274, 282-83 (Pa. Super. 2009) (emphasis added; citation omitted); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Where a trial court grants a post-sentence motion and imposes a new sentence, the defendant must preserve any challenge to the discretionary aspects of the new sentence either through a second post-sentence motion or at the time of the resentencing; otherwise, the claim is waived. *See Commonwealth v. Levy*, 83 A.3d 457, 467 (Pa. Super. 2013) (holding appellant's failure to file a post-sentence motion after resentencing "waived his challenges to the discretionary aspects of his sentence.");

- 11 -

*Commonwealth v. Cottman*, 476 A.2d 40, 44 (Pa. Super. 1984) (where the trial court granted appellant's post-sentence motion and imposed a new sentence, but appellant did not thereafter file a second post-sentence motion challenging the new sentence, appellant waived any challenge to the discretionary aspects of the new sentence, as "he failed to provide [the sentencing court] an opportunity [to reconsider] the amended sentence[.]"); *see also Commonwealth v. Broadie*, 489 A.2d 218, 220 (Pa. Super. 1985) (recognizing that a "modified sentence constitutes a new sentence from the date of which the time for filing a notice of appeal will begin to run anew," and that "[i]f the party who filed the original [post-sentence] motion is still dissatisfied with the sentence, a second [post-sentence] motion gives the sentencing court the first opportunity to modify the new sentence.").

Instantly, Appellant did not file a second post-sentence motion following the resentencing hearing. Moreover, he did not preserve his discretionary sentencing challenge at the resentencing hearing. Immediately after the VOP court's imposition of the new sentence, the following exchange occurred between Appellant and his counsel:

> [Appellant's counsel]: **You have 10 days from today to file any post-sentence motions.** You have 30 days from today's date to file an appeal to the Superior Court. Do you understand that?
>
> [Appellant]: Yeah. I would like to appeal it. I want to appeal the 7 to 14.
>
> [Appellant's counsel]: I understand.

- 12 -

[Appellant]: I think it should be run concurrent. All my time in front of [a different judge in a different criminal case] was consecutive, too.

[Appellant's counsel]: **There's nothing before the** [c]**ourt right now as far as rearguing your sentence. You and I will talk about any options you have post-sentence.** Do you understand?

[Appellant]: Yes, sir.

N.T., 11/21/23, at 16 (emphasis added; formatting modified). The foregoing exchange establishes that Appellant was properly advised of the requirement that he file another post-sentence motion if he desired to preserve a discretionary sentencing challenge.

Accordingly, because Appellant failed to preserve his discretionary sentencing challenge in a post-sentence motion or at the resentencing hearing, he waived the issue. *Levy*, 83 A.3d at 467; *Cottman*, 476 A.2d at 44; *Gibbs*, 981 A.2d at 282-83.

Nevertheless, even if Appellant had not waived his discretionary sentencing claim, we would determine that it lacks merit. As stated above, Appellant's brief includes the requisite Rule 2119(f) statement. *See* Appellant's Brief at 8-11. Therein, Appellant claims the VOP court abused its discretion in imposing a sentence of total confinement, "imposed for [Appellant's] first probation violation, [which] is manifestly excessive under the circumstances and not necessary to protect to the public nor to rehabilitate [Appellant]." *Id.* at 10-11. Appellant contends the VOP court failed to

- 13 -

adequately consider "multiple mitigating factors" that Appellant presented at the resentencing hearing. *Id.* at 11.

Appellant's claim presents a substantial question. ***See Commonwealth v. Velez***, 273 A.3d 6, 9 (Pa. Super. 2022) (a claim that the sentencing court failed to consider mitigating factors, in conjunction with a claim that the sentence was excessive, raises a substantial question); ***Commonwealth v. Ferguson***, 893 A.2d 735, 737 (Pa. Super. 2006) (a claim that the VOP court, at sentencing, imposed a manifestly excessive sentence of total confinement raises a substantial question).

"The standard employed when reviewing the discretionary aspects of sentencing is very narrow." ***Commonwealth v. King***, 182 A.3d 449, 454 (Pa. Super. 2018) (citation omitted). "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Reid***, 323 A.3d 26, 30 (Pa. Super. 2024) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (citation and quotation marks omitted); ***see also Commonwealth v. Hill***, 66 A.3d 365, 370 (Pa. Super. 2013) (stating a sentencing court "has broad discretion in choosing the range of permissible

confinements that best suits a particular defendant and the circumstances surrounding his crime." (citation omitted)).

Our Supreme Court has often recognized that

the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

***Commonwealth v. Pasture***, 107 A.3d 21, 27 (Pa. 2014) (citations and quotation marks omitted).

We are mindful that

[t]he imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Starr***, 234 A.3d 755, 760-61 (Pa. Super. 2020) (citation omitted)

On review, we determine the validity of the revocation proceedings and the authority of the VOP court to consider the same sentencing alternatives that it had at the time of the initial sentencing, including incarceration. 42 Pa.C.S.A. § 9771(b); ***see also Commonwealth v. Tann***, 79 A.3d 1130, 1132 (Pa. Super. 2013) ("[U]pon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." (citation

- 15 -

omitted)). Following the revocation of probation, the court may impose a sentence of total confinement if any of the following conditions exist: the defendant has been convicted of another crime; the conduct of the defendant indicates it is likely he will commit another crime if he is not imprisoned; or, such a sentence is essential to vindicate the authority of the court. **See** 42 Pa.C.S.A. § 9771(c).

When imposing a sentence of total confinement after a probation revocation, the sentencing court must consider the factors set forth in section 9721(b) of the Sentencing Code. **See Commonwealth v. Derry**, 150 A.3d 987, 994 (Pa. Super. 2016); **see also** 42 Pa.C.S.A. § 9721(b) (providing that when determining an appropriate sentence, the court must consider the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the offender). Following a revocation of probation, a VOP court need not undertake a lengthy discourse for its reasons for imposing a sentence of total confinement, but the record as a whole must reflect the court's consideration of the facts of the crime or violation, and the character of the offender. **Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010); **see also id.** (emphasizing that where the record reveals the VOP court had engaged in such a consideration, an appellate court "cannot re-weigh the sentencing factors to achieve a different result.").

Instantly, Appellant argues that the VOP court "abused its discretion in imposing [a] manifestly unreasonable probation revocation sentence," which failed to account for "mitigating factors." Appellant's Brief at 18. Appellant points out that "this was [Appellant's] first probation violation on" case 10257. *Id.* at 17. Appellant further asserts that following his release from incarceration regarding the underlying offenses, he "had been home for two years without any [probation] violations, had passed all of his drug screens and had paid all of his court costs and fines." *Id.* at 18. Finally, Appellant points out that immediately prior to sentencing, he stated as follows regarding the new offenses:

> [W]hen the kids were taken out of me and my girlfriend's custody [by DHS], we were fighting to get [the children] back for six months straight. Me and my girlfriend were doing and complying with everything that DHS wants us to do. And then what made them file charges against me is when [the children] were taken out of our house and placed into my girlfriend's cousin's house, it got to the point where [the cousin did not] want to give [the children] back because she's getting all of this money for them. So [the cousin] went down and filed a police report and said I hit one of [the children]. ….

*Id.* at 17-18 (quoting N.T., 11/21/23, at 9-10).

The Commonwealth counters the VOP court properly exercised its discretion in imposing a reasonable sentence, which accounted for Appellant's individualized circumstances and all mitigating evidence. *See* Commonwealth Brief at 16-20. The Commonwealth maintains that the VOP court

> considered the [PSI] and mental health reports that were previously prepared in the case; the circumstances of the new convictions that led to the revocation of [Appellant's] probation;

- 17 -

and the "*Gagnon* reports" describing [Appellant's] noncompliant behavior with the terms of his probation. Thus, the court had a sound basis for its sentencing decision.

*Id.* at 17 (citing **Pasture**, 107 A.3d at 28 ("When sentencing is the consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where… the trial judge had the benefit of a PSI during the initial sentencing proceedings.")).

The VOP court, after considering the record as a whole, found meritless Appellant's claim that the court had abused its discretion and imposed an excessive sentence, reasoning as follows:

> The [VOP] court imposed a sentence of total confinement after thoroughly evaluating all relevant sentencing factors that follow [probation] revocation. Most particularly, [the VOP] court reflected upon the **seriousness of the underlying offenses** and [the] nature and circumstances of the direct [probation] violations, as well as [Appellant's] pervasive lack of compliance with the rehabilitative conditions of his supervision. [**Appellant**] **presented a clear and present danger to the community. His recidivism risk, particularly for committing violent offenses, was high.** … [The VOP] court reasonably determined that Appellant's conduct had unequivocally indicated [a] strong likelihood that he would commit another crime if he [was] not imprisoned. Deterrence against commission for anti-social or criminal conduct through confinement was deemed necessary.

> Despite Appellant's [claim] to the contrary, the imposition of this sentence … remains well within the discretionary and statutory power of the [VOP] court. Bearing in mind, that **at the time** [**Appellant**] **had been originally sentenced, he had faced a possible maximum term of twenty (20) years of total confinement for the robbery offense and an additional five (5) years for the PIC charge.** However, [the trial] court originally imposed a merciful conditional sentence consisting of a three[-year] minimum term of confinement and a six-year period

of conditioned probation. Only after Appellant had concretely violated the terms and conditions of his sentence, with the subsequent convictions involving violence upon children,[6] and [in light of Appellant's] overall non-compliant behavior that demonstrated that [] probation had been ineffective, [the VOP court imposed an aggregate sentence] of **seven (7) years to fourteen (14) years**….

Appellant, having violated the conditions of his probation, was placed in the same position that he was in at the time of his original conviction, and [**the VOP**] **court had the statutory authority to sentence Appellant to a term of total confinement up to twenty-five years** [**in prison**] on the charges to which he had pled guilty. The imposition of total confinement upon revocation of Appellant's probation was not a second punishment for his criminal act, but was an integral element of the original conditional sentence.

\* \* \*

The Superior Court of Pennsylvania has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated: a probation violation is established whenever it is shown that the conduct of the probationer indicates that the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct. ***See Commonwealth v. Ortega***, 995 A.2d 879, 886 (Pa. Super. 2010). Here, Appellant has amply shown that probation had been an ineffective vehicle and of no deterrence to him. He [] disregarded every rehabilitative condition that had been inserted for his benefit from the outset. Appellant posed a danger to the community. …. Contrary to Appellant's argument, [**the VOP**] **court <u>did</u> consider and contemplate Appellant's rehabilitative needs when determining an appropriate sentence**.

_____

[6] At the resentencing hearing, the VOP court stated that it had reviewed the trial transcript from the case involving the new offenses, "and found that [Appellant's] behavior was quite violent in nature, and it did have a significant effect, at the very least, emotionally on the children involved." N.T., 11/21/23, at 8.

- 19 -

VOP Court Opinion, 5/28/24, at 12-14 (emphasis and footnote added; capitalization, punctuation, and formatting modified).

The VOP court concluded, "[c]onsequently, [the VOP] court was within its statutory power to sentence Appellant to a term of total confinement … upon revocation of his probation, and his [challenge to the discretionary aspects of his sentence] has no merit." *Id.* at 14.

Our review of the record confirms the VOP court's reasoning is supported by the record, and we agree with its conclusion. The court was thoroughly familiar with Appellant, his individualized circumstances, and criminal history and recidivism. The court also considered all relevant sentencing factors in fashioning Appellant's sentence. At the resentencing hearing,[7] the VOP court stated it had considered, *inter alia*, (a) the sentencing "guideline calculations at issue and all of the factors of sentencing following revocation of probation," N.T., 11/21/23, at 12; (b) Appellant's "circumstances and [] upbringing," *id.* at 9; (c) Appellant's "extensive history as to [] ingestion of opiates, heroin, marijuana, and alcohol," *id.*; (d) "the violent nature and circumstances associated with the underlying [offenses] …, as well as the violence that [Appellant inflicted] … against children" with respect to the new offenses, *id.*

_____

[7] We reiterate that prior to the resentencing hearing, the VOP court had **granted** Appellant's motion for reconsideration of the original VOP sentence.

at 7; (e) Appellant's PSI,[8] *id.* at 11; and (f) Appellant's mental health assessments. *Id.* Prior to imposing sentence, the VOP court also considered Appellant's statements regarding mitigating evidence. *See id.* at 6-10. Moreover, the aggregate sentence that the VOP court imposed constituted a significant reduction in sentence from the original VOP sentence (*i.e.*, from 9-19 years in prison to 7-14 years). *Id.* at 10, 15; *see also id.* at 12 (VOP court observing that its sentence was "consistent with the recommendations of the Assistant District Attorney[.]")

We discern no abuse of the VOP court's ample sentencing discretion. The VOP court imposed a reasonable sentence of total confinement for Appellant's direct probation violation. Accordingly, even if Appellant had not waived his discretionary sentencing challenge, his claim would merit no relief.

─────────────────────────────────

[8] As the VOP court had the benefit of a PSI, it is "presumed that [the court] was aware of the relevant information regarding [Appellant's] character and weighed those considerations **along with mitigating statutory factors**." *Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa. Super. 2022) (emphasis added; citation omitted); *see also Devers*, 546 A.2d at 18 (holding where the sentencing court considered all relevant factors and was "fully informed by the [PSI], the sentencing court's discretion should not be disturbed."). Moreover, a "sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that … she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006) (citation omitted).

Based on the foregoing, we vacate the provision of Appellant's sentence imposing the VOP conditions.[9]  In all other respects, we affirm.

Judgment of sentence affirmed in part and vacated in part.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/10/2025

---

[9] Because vacatur of the VOP conditions does not disturb the VOP court's overall sentencing scheme, no remand for resentencing is required. ***See In the Interest of P.S.***, 158 A.3d 643, 652-53 (Pa. Super. 2017) (citing ***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) ("[I]f our decision does not alter the overall [sentencing] scheme, there is no need for a remand.")); ***see also Commonwealth v. Carey***, 249 A.3d 1217, 1229 (Pa. Super. 2021) (same, in the context of the vacatur of an unlawful "provision of [a]ppellant's sentence imposing a 12-month period of reentry supervision.").